1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   RAUL ZAMUDIO and SOLEDAD              No.  2:16-cv-02693-TLN-DB
     ZAMUDIO
12
                      Plaintiffs,
13                                          **ORDER**
              v.
14
     FMC CORPORATION and DOES 1
15   through 20, inclusive,

16                    Defendants.

17

18          This matter is before the Court on Defendant FMC Corporation's ("Defendant") Motion

19   for Summary Judgment.  (ECF No. 21.)  Plaintiffs Raul Zamudio and Soledad Zamudio

20   (collectively, "Plaintiffs") filed an opposition.  (ECF No. 26.)  Defendant filed a reply.  (ECF No.

21   28.)  For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendant's

22   motion.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                              1

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

This case arises from a workplace injury that took place at Escalon Premier Brands (the "Facility"), a tomato processing facility in Escalon, California.  (ECF No. 26-1 at 2.)  The Facility receives raw tomatoes, processes the fruit in its facility, and turns the fruit into an end product for consumption.  (*Id.*)  The Facility uses machines called "pulpers" to adjust the size of tomato finish before it is added to a final product.  (*Id.*)  The Facility numerically identifies its pulpers 1 through 18.  (*Id.*)  On July 2, 2015, Plaintiff Raul Zamudio ("Mr. Zamudio") was seriously injured while cleaning a pulper designated Pulper 16.  (*Id.* at 10–11.)  More specifically, Plaintiffs allege Pulper 16 started suddenly while in the off position and caused bi-lateral amputation to both of Mr. Zamudio's arms.  (*Id.* at 11.)  Plaintiffs allege Defendant originally manufactured Pulper 16.  (ECF No. 8 at 2.)

On November 14, 2016, Plaintiffs filed the instant personal injury action against Defendant.  (ECF No. 1.)  Plaintiffs filed a First Amended Complaint ("FAC") on January 24, 2017.  (ECF No. 8.)  The FAC asserts six causes of action: (1) strict products liability for a manufacturing defect; (2) strict products liability for a design defect; (3) strict products liability for failure to warn; (4) negligent product liability; (5) breach of express warranties; and (6) loss of consortium.  (*Id.* at 5–12.)  Defendant filed the instant motion for summary judgment on March 13, 2018.  (ECF No. 21.)  Plaintiffs filed an opposition on April 3, 2018.  (ECF No. 26.)  Defendant filed a reply on April 12, 2018.  (ECF No. 28.)

## II.   STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings,

---

[1]   The background section provides a general overview of the dispute based on the evidence submitted by the parties, from which the Court finds there are no genuine issues of material fact. A more detailed analysis of the evidentiary record appears in the discussion below.

1  depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

2  which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

3  *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

4  at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

5  solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

6  324 (internal quotations omitted).  Indeed, summary judgment should be entered against a party

7  who does not make a showing sufficient to establish the existence of an element essential to that

8  party's case, and on which that party will bear the burden of proof at trial.

9       If the moving party meets its initial responsibility, the burden then shifts to the opposing

10  party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

11  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities*

12  *Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of a factual

13  dispute, the opposing party may not rely upon the denials of its pleadings but is required to tender

14  evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

15  support of its contention that a dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

16  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

17  suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

18  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

19  the nonmoving party.  *Id.* at 251–52.

20       In the endeavor to establish the existence of a factual dispute, the opposing party need not

21  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

22  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

23  trial."  *First Nat'l Bank*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to

24  'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

25  trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963

26  amendments).

27       In resolving the summary judgment motion, the Court examines the pleadings,

28  depositions, answers to interrogatories, and admissions on file, together with any applicable

1   affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir.

2   1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that

3   may be drawn from the facts pleaded before the court must be drawn in favor of the opposing

4   party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is

5   the opposing party's obligation to produce a factual predicate from which the inference may be

6   drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*,

7   810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial,

8   the opposing party "must do more than simply show that there is some metaphysical doubt as to

9   the material facts."  *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not

10   lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

11   *Id.* at 587.

12       **III.   ANALYSIS**

13       Defendant moves for summary judgment on several grounds.  As to Plaintiffs' strict

14   products liability and negligence claims, Defendant argues it is not liable for Mr. Zamudio's

15   injuries because a third party significantly remanufactured Pulper 16 in 2009 and there is no

16   evidence that Defendant originally manufactured Pulper 16.  Defendant also argues Plaintiffs fail

17   to plead and cannot prove their breach of express warranty claim.  The Court will address

18   Defendant's arguments in turn.

19       A.   Whether Defendant is Liable After the 2009 "Remanufacture" of Pulper 16

20       Defendant argues that even if Plaintiffs could prove Defendant originally manufactured

21   Pulper 16, the machine's original design did not cause Mr. Zamudio's injuries because third

22   parties remanufactured Pulper 16 in 2009.[2]  In opposition, Plaintiffs argue that whether Pulper 16

23   was so significantly altered by a third party as to absolve Defendant of liability is necessarily a

24   question of fact not appropriate for determination on summary judgment.  (ECF No. 26 at 5.)

25   Alternatively, Plaintiffs request additional time to conduct discovery under Federal Rule of Civil

26   _____

27   [2]     "Remanufacturing" is a term of art in the commercial food processing industry, which
    refers to a process done to older existing equipment when it has reached the end of its useful life.
    (ECF No. 21-1 at 6.)  The parties disagree whether Pulper 16 was remanufactured rather than
28   simply repaired in a manner consistent with its original design.

4

Procedure ("Rule") 56(d).  (*Id.* at 27.)  More specifically, Plaintiffs request additional time to file

an expert declaration from Dr. Kenneth Blundell, a product engineer, and also to conduct an

inspection of Pulper 16.[3]  In reply, Defendants argue the Court should deny Plaintiffs' Rule 56(d)

request because Plaintiffs did not pursue discovery diligently and fail to set forth facts

establishing how additional discovery would preclude summary judgment.  On April 12, 2018,

approximately eight days after filing their opposition and the same day Defendant filed its reply,

Plaintiffs filed Dr. Blundell's declaration.[4]  (ECF No. 31.)

      Rule 56(d) prescribes: "If a nonmovant shows by affidavit or declaration that, for

specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer

considering the motion or deny it."  Fed. R. Civ. P. 56(d).  "To prevail under this Rule, parties

opposing a motion for summary judgment must make '(a) a timely application which (b)

specifically identifies (c) relevant information, (d) where there is some basis for believing that the

information sought actually exists.'"  *Employers Teamsters Local Nos. 175 and 505 Pension

Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129–30 (9th Cir. 2004) (quoting *VISA Int'l Serv.

Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)).

      "The burden is on the party seeking additional discovery to proffer sufficient facts to show

that the evidence sought exists, and that it would prevent summary judgment."  *Chance v. Pac–

Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n. 6 (9th Cir. 2001).  Further, a court may deny "further

discovery if the movant has failed diligently to pursue discovery in the past."  *Cal. Union Ins. Co.

v. Am. Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990) (citations omitted).  However,

---

[3]    As will be discussed, the Court grants Plaintiffs' request as to Dr. Blundell's declaration. Because Dr. Blundell's declaration and the existing evidence together are sufficient to preclude summary judgment as to Plaintiffs' strict liability and negligence claims, the Court need not and does not address Plaintiff's request to inspect Pulper 16.  The Court also notes that it already addressed Plaintiffs' request to inspect Pulper 16 at length in its previous order granting Plaintiffs' *ex parte* application to modify the scheduling order.  (ECF No. 45.)

[4]    On the same date Plaintiffs filed Dr. Blundell's declaration, Plaintiffs also filed a list of product liability cases in which Dr. Blundell served as an expert witness (ECF No. 32), Dr. Blundell's resume (ECF No. 33), and a declaration from Plaintiffs' counsel explaining "Plaintiffs secured the declaration of Dr. Blundell as soon as was practicable" (ECF No. 30 at 2).  Defendant did not file any objections or opposition to the foregoing documents.

"[c]ourts usually employ a 'generous approach toward granting [Rule 56(d)] motions.'"  *City of W. Sacramento, Cal. v. R & L Bus. Mgmt.*, No. 2:18-cv-00900-WBS-EFB, 2019 WL 5457029, at *1–2 (E.D. Cal. Oct. 24, 2019) (citation omitted); *see also Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

### i.    Diligence

Defendant contends that the Court should deny Plaintiffs' Rule 56(d) request because Plaintiffs have not been diligent in seeking discovery.  (ECF No. 28 at 4–5.)  Defendant's argument is unavailing.  A mere month before Defendant filed the instant motion, the Court approved a joint stipulation extending discovery deadlines.  (ECF No. 20.)  Moreover, this Court rejected an essentially identical argument from Defendant when it granted Plaintiffs' *ex parte* application to modify the scheduling order on October 10, 2018 (ECF No. 45), and the parties have jointly stipulated to extend discovery deadlines many times since.  Most recently, on February 23, 2020, the Court approved a joint stipulation extending the deadline to complete expert discovery to July 30, 2020.  (ECF No. 68.)  In light of the fact that expert discovery is not yet closed, it would be unreasonable for the Court to find Plaintiffs were not diligent in pursuing expert discovery for the purpose of opposing the present motion.  While the Court is mindful of Defendant's concerns, the Court cannot say that Plaintiffs' delay constitutes bad faith in light of the parties' many joint stipulations to extend discovery.  *See Chance*, 242 F.3d at 1161 n. 6.

### ii.    Affidavit

To comply with Rule 56(d), Plaintiffs must submit an affidavit or declaration "setting forth the particular facts expected from further discovery."  Fed. R. Civ. P. Rule 56(d); *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986).

Here, Plaintiffs have attached a sworn declaration of their attorney, Boris Treyzon ("Mr. Treyzon") to their opposition.  (ECF No. 26-2.)  Mr. Treyzon states that Dr. Blundell's expert declaration will affirm the following: (1) Defendant originally manufactured Pulper 16; (2) Pulper 16 was defective because it did not include an interlock device; and (3) the 2009 remanufacture of Pulper 16 was based on its original design.  (*Id.* at 4; ECF No. 26 at 3.)  Because Plaintiffs have "attached a detailed sworn declaration from counsel setting forth particular facts expected to be

1   obtained" from Dr. Blundell, Plaintiffs have satisfied the affidavit requirement under Rule 56(d).[5]

2   *See TMJ Inc., v. Nippon Tr. Bank*, 16 F. App'x 795, 797 (9th Cir. 2001).

3                              *iii.    Existence of Evidence Sought*

4          Under Rule 56(d), the party requesting a continuance must show that the evidence sought

5   exists.  *Chance*, 242 F.3d at 1161 n. 6.  "Denial of a Rule [56(d)] application is [therefore] proper

6   where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure

7   speculation."  *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991).

8          As mentioned, Plaintiffs filed Dr. Blundell's declaration on April 12, 2018.  (ECF No.

9   31.)  Dr. Blundell's declaration, which will be discussed in more detail below, includes his

10  findings that Pulper 16 was defective as originally designed and the "remanufacture" of Pulper 16

11  was consistent with its original design.  Plaintiffs' ability to provide Dr. Blundell's declaration

12  undermines the argument that the evidence sought does not exist.  Therefore, the Court finds that

13  Plaintiffs have met the existence requirement.

14                             *iv.    Essentialness of Evidence Sought*

15         "[T]he party seeking the continuance must show that it lacks the 'facts essential' to resist

16  the summary judgment motion."  *McCormick*, 26 F.3d at 885.  The moving party must explain

17  why those facts would preclude summary judgment.  *Tatum v. City & Cty. of San Francisco*, 441

18  F.3d 1090, 1100 (9th Cir. 2006).  For the reasons set forth below, the Court finds Plaintiffs have

19  met the essentialness requirement of Rule 56(d).

20         To prevail on their strict liability and negligence claims, Plaintiffs must establish

21  Defendant's defective product was the proximate cause of Mr. Zamudio's injuries.  *See generally*

22  *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 572 (1994) ("A manufacturer is liable only when a

23  defect in its product was a legal cause of injury."); *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 349

24  (2012) ("It is fundamental that the imposition of liability requires a showing that the plaintiff's

25  injuries were caused by an act of the defendant or an instrumentality under the defendant's

26

27  _____

    [5]      Because the Court finds that Mr. Treyzon's declaration satisfies Rule 56(d), the Court
28  OVERRULES Defendant's objection to the declaration.  (*See* ECF No. 28-1 at 2.)

1  control.").

2      Defendant primarily relies on testimony from John Raggio, the plant manager at the

3  Facility, and Taurino Trejo, a shift supervisor and lead mechanic at the Facility. That testimony

4  provides as follows. In 2009, the Facility hired third parties to redesign and remanufacture

5  various components of the existing pulpers. (ECF No. 21-2 at 4.) With regard to the top halves

6  of the machines, third parties installed new, redesigned access doors and metal external covers for

7  all the pulpers, including Pulper 16. (*Id.* at 6.) The remanufactured access doors or "pulper lids"

8  covered the mixing blades of the machine and the new metal external covers were placed on top

9  of the pulper lids. (*Id.* at 7.) The new external covers were completely redesigned and changed

10  from their prior form, evolving from a rounded top to a tent-like top. (*Id.*) The purpose of the

11  new external cover was to prevent individuals from opening and examining a machine while it

12  was running, and metal chains were also added to secure the new external covers of the

13  remanufactured pulper machines during operation. (*Id.* at 7–8.) Finally, the Facility relied on the

14  third parties who remanufactured the pulper machines to install any safety devices that needed to

15  accompany the new top halves of the machines. (*Id.* at 8.) In sum, Defendant's evidence

16  suggests that even if Pulper 16 was originally Defendant's product, neither the top half nor the

17  bottom half was original after the remanufacturing process. (*Id.*)

18      In opposition, Plaintiffs argue that Dr. Blundell's declaration will provide opinions that

19  Defendant is liable because the 2009 repairs followed Pulper 16's original design. (ECF No. 26

20  at 3.) As mentioned, Plaintiffs filed Dr. Blundell's declaration approximately eight days after

21  filing their opposition. In the declaration, Dr. Blundell states that he reviewed numerous

22  photographs, notes pertaining to OSHA inspections, and relevant deposition testimony. (ECF No.

23  31 at 3.) Based on his review, Dr. Blundell states that Pulper 16 should have been supplied with

24  an interlocking guard attached to the inner cover that would cut off the ability of the shaft and

25  blades to move while the inner cover was removed. (*Id.* at 4.) According to Dr. Blundell, such

26  an interlocking guard would have prevented Mr. Zamudio's injury. (*Id.*)

27      Dr. Blundell goes on to state that despite the use of third-party components during the "so-

28  called remanufacturing" of Pulper 16, Defendant's original design still exists with the attendant

1    safety defects that originated when the machine was first designed and manufactured.  (*Id.*)  Dr.

2    Blundell points out that none of the directions regarding changes to the pulpers in 2009 stated that

3    the inner cover should be modified or that an interlocking guard should either be removed or

4    installed.  (*Id.*)  Dr. Blundell also states that any electrical components that were replaced did not

5    modify the original design.  (*Id.*)  For example, Dr. Blundell emphasizes that Defendant does not

6    build electric motors from scratch and routinely used WEG motors in its original design.  (*Id.* at

7    4–5.)  Similarly, Dr. Blundell states that Defendant would have used a third-party vendor such as

8    Allen Bradley to supply the necessary components for Pulper 16's control system.  (*Id.* at 5.)

9         The Court concludes the evidence sets forth "differing versions of the truth" that create a

10   genuine dispute of material fact.  *See First Nat'l Bank*, 391 U.S. at 288–89.  Dr. Blundell's

11   declaration directly contradicts Defendant's argument that Mr. Zamudio's injuries cannot be

12   traced back to Pulper 16's original design.  More specifically, Dr. Blundell concludes that the

13   "remanufactured" Pulper 16 was consistent with its original design, which was defective because

14   it lacked an interlocking guard on its internal cover.  (ECF No. 31 at 4.)  Dr. Blundell also

15   concludes that an interlocking guard would have prevented Mr. Zamudio's injuries.  (*Id.*)  While

16   Defendant's evidence suggests that some of Pulper 16's components were completely redesigned,

17   none of the cited testimony specifically addresses the lack of an interlocking guard on the internal

18   cover of the machine.  Indeed, when asked whether the 2009 remanufacturing of the top halves of

19   the pulpers included both the internal and external covers, Mr. Raggio responded that he did not

20   recall as to the internal covers.  (ECF No. 23-1 at 57.)  It is also unclear whether Mr. Raggio's job

21   as plant manager qualifies him to provide an expert opinion regarding the technical aspects of the

22   pulpers and the extent of the remanufacture.  Looking at the evidence in the light most favorable

23   to Plaintiffs and drawing all reasonable inferences in their favor, the Court cannot say as a matter

24   of law that third-party "remanufacturing" in 2009 broke the causal link between Pulper 16's

25   original design and Mr. Zamudio's injuries in 2015.

26        For the foregoing reasons, the Court grants Plaintiffs' Rule 56(d) request to the extent it

27   seeks to have the Court defer ruling on Defendant's motion until Plaintiffs were able to gather

28   evidence in the form of Dr. Blundell's declaration.  Further, because Dr. Blundell's declaration

1    creates a genuine dispute as to whether the 2009 remanufacturing broke the causal link between

2    Pulper 16's original design and Mr. Zamudio's injuries, the Court denies summary judgment on

3    the basis of Defendant's first argument.

4                    B.        Whether Defendant Originally Manufactured Pulper 16

5            Defendant next argues Mr. Raggio's deposition testimony "unequivocally shows" there is

6    no evidence that Defendant originally manufactured Pulper 16.  (ECF No. 21-1 at 23.)  In

7    opposition, Plaintiffs argue that Mr. Raggio's deposition testimony raises a genuine dispute of

8    material fact as to whether Defendant originally manufactured Pulper 16.  (ECF No. 26 at 5.)

9            "A manufacturer is strictly liable in tort when an article he places on the market, knowing

10   that it is to be used without inspection for defects, proves to have a defect that causes injury to a

11   human being."  *Greenman v. Yuba Power Prod., Inc.*, 59 Cal. 2d 57, 62 (1963).  "[A]

12   manufacturer is liable when *he* places a defective product in the hands of a consumer."  *Garcia v.*

13   *Joseph Vince Co.*, 84 Cal. App. 3d 868, 874 (1978) (emphasis in original).

14           In support of its argument, Defendant analogizes the instant case to *Garcia*.  In *Garcia*,

15   the plaintiff's eye was injured during a college fencing meet when his opponent's blade broke

16   through his mask.  *Id.* at 872.  The plaintiff brought a products liability action against American

17   Fencer Supply ("American"), the alleged manufacturer of the blade, as well as Joseph Vince

18   Company ("Vince"), the alleged manufacturer-supplier of the mask.  *Id.* at 871.  As to the blade,

19   the appellate court explained that during college fencing meets, team members sometimes used

20   their own blades and other times used blades owned by the school.  *Id.* at 872.  The user of the

21   blade in question and his school owned blades from both Vince and American.  *Id.*  After the

22   accident, the coaches of both teams examined the blade in question and arrived at differing

23   conclusions about whether the blade complied with regulations.  *Id.*  All the blades were then

24   placed back in the team bag.  *Id.*  At that point, the identity of the blade in question was "lost or

25   mixed up with the others in the shuffle."  *Id.*  The user of the blade could not recall which blade

26   he used, and it was not produced at trial.  *Id.* at 874.  Because the identity of the blade was lost,

27   the trial court entered a judgment for nonsuit in favor of American because it found the plaintiff

28   could not prove whether Vince or American manufactured the blade.  *Id.* at 874–75.  The

1   appellate court affirmed, emphasizing that the evidence was "not sufficient to link American with

2   [the blade in question] by anything more than a chain of conjecture" because the blade "could

3   have originated with either of two different sources of supply."  *Id.*

4        Defendant argues that like in *Garcia*, Plaintiffs here can rely on nothing more than

5   conjecture to connect Defendant to Pulper 16.  Defendant summarizes the evidence on this issue

6   as follows: (1) Mr. Raggio, the highest-ranking employee at the Facility, is aware of no other

7   living person with more knowledge than himself concerning the origin of Pulper 16, and he has

8   unlimited access to all historical documents controlled by the Facility; (2) Mr. Raggio has no

9   information as to when Pulper 16 was originally manufactured and he cannot identify the original

10  manufacturer; (3) the Facility has no invoices evidencing the original purchase of Pulper 16; (4)

11  the Facility has no information that Defendant ever inspected, installed, sold, rented to, or

12  repaired Pulper 16 or any component part, at any time; and (5) at the time of Mr. Zamudio's

13  injuries, neither the body of Pulper 16 nor any of its component parts contained any identifying

14  marking, symbol, logo, or writing bearing the name "FMC" or any other marking associated with

15  Defendant.  (ECF No. 28 at 4–5.)  Defendant argues "[l]ike the blade user and the blade user's

16  coach in *Garcia*, Plaintiffs can only guess as to what entity originally manufactured the product

17  which injured Mr. Zamudio."  (ECF No. 21-1 at 23.)

18       The Court finds that *Garcia* is factually distinguishable from the instant case.  Unlike the

19  blade in *Garcia*, Pulper 16 is not "lost."  Not only are there photographs of Pulper 16, but the

20  machine is also presumably available for inspection considering that both parties previously

21  indicated they seek to have their experts inspect the machine.  (*See* ECF No. 36 at 3.)  Moreover,

22  to the extent Defendant argues Mr. Raggio's deposition testimony "unequivocally shows" there is

23  no evidence that Defendant manufactured Pulper 16, the Court disagrees.  When asked whether

24  he was aware of any documents that would evidence the purchase from the original manufacturer

25  of Pulper 16, Mr. Raggio stated that the Facility owns an FMC manual dated 1957.  (ECF No. 26-

26  2 at 30.)  Mr. Raggio went on to say that the schematic of an FMC pulper model 100 in the

27  manual "highly resembles" pulpers 1 through 17.  (*Id.* at 32.)  Mr. Raggio added that the pulpers

28  at the Facility were called "FMC 100s."  (*Id.* at 33.)  As mentioned, the opposing party need not

1    establish a material issue of fact conclusively in its favor to survive summary judgment.  *See First*

2    *Nat'l Bank*, 391 U.S. at 288–89.  Here, Mr. Raggio's deposition testimony does not rule out the

3    possibility that Defendant originally manufactured Pulper 16.  To the contrary, Mr. Raggio's

4    testimony leads to reasonable inferences that the Facility owned FMC pulpers, FMC pulpers are

5    distinct and recognizable, and the manufacturer of Pulper 16 can be determined by comparison to

6    the FMC manual or otherwise upon further inspection.

7           In sum, Mr. Raggio's deposition testimony creates a genuine dispute as to whether

8    Defendant originally manufactured Pulper 16.  As such, the Court denies summary judgment on

9    the basis of Defendant's second argument.  For the foregoing reasons, the Court DENIES

10   Defendant's motion for summary judgment as to Plaintiffs' strict liability and negligence claims.

11                      C.      Breach of Express Warranty Claim

12          To prove their breach of an express warranty claim, Plaintiffs must show that the seller:

13   "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise

14   or description formed part of the basis of the bargain; (3) the express warranty was breached; and

15   (4) the breach caused injury to the plaintiff."  *Blennis v. Hewlett-Packard Co.*, No. C 07-00333

16   JF, 2008 WL 818526, at *2 (N.D. Cal. Mar. 25, 2008).  In addition, to plead a claim for breach of

17   express warranty, "one must allege the exact terms of the warranty, plaintiff's reasonable reliance

18   thereon, and a breach of that warranty which proximately causes plaintiff injury."  *Blennis*, 2008

19   WL 818526, at *2 (quoting *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142

20   (1986)).

21          Defendant argues Plaintiffs fail to sufficiently plead and cannot prove their breach of

22   express warranty claim.  (ECF No. 21-1 at 25.)  More specifically, Defendant argues there is no

23   evidence of the following: (1) the exact terms of a warranty; (2) that Plaintiffs reasonably relied

24   on the warranty; or (3) that a breach of the warranty proximately caused Mr. Zamudio's injury.

25   (*Id.*)  Summary judgment should be entered against a party who does not make a showing

26   sufficient to establish the existence of an element on which that party will bear the burden of

27   proof at trial.  Moreover, if the moving party establishes the absence of a genuine issue of

28   material fact — as Defendant has in this case — the burden then shifts to the opposing party to

                                              12

1    establish that a genuine issue as to any material fact actually does exist.  *Matsushita*, 475 U.S. at

2    585–87.  Plaintiffs here have not met their burden of establishing the elements of their breach of

3    express warranty claim.  And because they did not respond to Defendant's argument concerning

4    their breach of express warranty claim, nor do they cite any evidence in support of their claim,

5    they have failed to raise any disputed issue of fact precluding summary judgment.  While

6    Plaintiffs are entitled to all reasonable inferences, they must produce a factual predicate from

7    which the inference may be drawn.  *Richards*, 602 F. Supp. at 1244–45.  In the absence of

8    evidence or any argument to the contrary, the Court concludes there is no genuine issue of

9    material fact as to Plaintiffs' breach of express warranty claim.  Therefore, the Court GRANTS

10   Defendant's motion for summary judgment as to Plaintiffs' breach of express warranty claim.

11       **IV.**   **CONCLUSION**

12       For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 21)

13   is hereby GRANTED in part and DENIED in part as follows:

14       1.  Defendant's Motion for Summary Judgment is DENIED as to Plaintiffs' strict

15           products liability and negligence claims; and

16       2.  Defendant's Motion for Summary Judgment is GRANTED as to Plaintiffs' breach of

17           express warranty claim.

18       IT IS SO ORDERED.

19   DATED:  May 5, 2020

20

21

22                                           _____

23                                       Troy L. Nunley
                                    United States District Judge

24

25

26

27

28